# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CYRIL ANDRE MARCEL SIRAS, | No. 3:25-CV-02395 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| IDIATOU BAH, HASSATOU DIALLO and THIERO DIALLO, | |
| Respondents. | |

## MEMORANDUM OPINION

### DECEMBER 22, 2025

### I.   BACKGROUND

Petitioner Cyril Andre Marcel Siras ("Siras") brought the instant emergency petition against Idiatou Bah ("Bah") and Hassatou and Thiero Diallo ("the Diallos") for the alleged secreting of his child, E.J.K.B., from France to the United States.[1] Petitioner alleges violations of the Hague Convention on the Civil Aspects of International Child Abduction ("the Hague Convention") and the International Child Abduction Remedies Act ("ICARA"). A show-cause hearing was held on the issue on this date.

---

[1]   Doc. 1 (Compl.).

At the hearing, the evidence presented showed as follows:

E.J.K.B., currently seven years old, was born to Siras and Bah in the United States but, since then, has lived her entire life in France. Siras and Bah never married, but the parties had an informal custody agreement where they "worked it out." The parties recently entered custody proceedings for E.J.K.B. in the Versailles Family Court in France, with both Siras and Bah seeking custody for E.J.K.B. There was a hearing scheduled for June 2025, but, at Bah's request, it was postponed until January 2026. Bah requested permission to leave France with the child; this permission was denied by Siras and the court officials overseeing the negotiation. Bah requested permission from Siras to order a new American passport for E.J.K.B., which Siras said he "absolutely" denied.

Bah brought E.J.K.B. to the United States in July 2025 for a purported vacation, a vacation that Siras objected to. Siras discovered that Bah and E.J.K.B. had left France on July 6, 2025, when he went to Bah's residence, and Bah told Siras that they had been on vacation for the past two months. It is undisputed that E.J.K.B. and Bah at some point visited the Diallos; conflicting evidence was presented as to how long the child remained with them. Siras took no action to further object to this "vacation" during this time.

After two months in the United States, Bah informed Siras that Bah had returned to France, leaving E.J.K.B. with "good people" in the United States. When

Siras requested Bah to return E.J.K.B. to France, she refused. E.J.K.B. was enrolled in a public school in New York City, but Siras had no knowledge of this and continued to believe that she resided with the Diallos in Monroe County, Pennsylvania. Since Bah left the United States, Elea's maternal grandparents have supervised her in the Bronx, New York while Bah resided in France.

## II.   ANALYSIS

"The Hague Convention, Article 1, sets forth its two primary objectives: '(a) to secure the prompt return of children wrongfully removed to or retained in any Contracting State; and (b) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States.'"[2] "The Hague Convention does not provide a forum to resolve international custody disputes, but rather it provides a legal process 'to restore the status quo prior to any wrongful removal or retention, and to deter parents from engaging in international forum shopping in custody cases.'"[3] The aim of the treaty is to "ensure that custody is adjudicated in what is presumptively the most appropriate forum— the country where the child is at home."[4] The United States is a signatory to the Convention, and has additionally passed ICARA to implement the convention.[5]

---

[2] *Karpenko v. Leendertz*, 619 F. 3d 259, 263 (3d Cir. 2010) (quoting the Hague Convention Article 1).
[3] *Id.* (quoting *Yang v. Tsui*, 499 F.3d 259, 270 (3d Cir. 2007).
[4] *Monasky v. Taglieri*, 589 U.S. 68, 79 (2020).
[5] *Monzon v. De La Roca*, 910 F.3d 92, 97 (3d Cir. 2018).

Under the Hague Convention, a child "abducted in violation of 'rights of custody' must be returned to the child's country of habitual residence, unless certain exceptions apply."[6] The petitioner "bears the initial burden of proving by preponderance of the evidence that the child was habitually resident in a State signatory to the Convention and was wrongfully removed to a different State as defined by Article 3."[7] "Under the Convention, a removal or retention is 'wrongful' if it breaches rights of custody 'under the law of the State in which the child was habitually resident immediately before the removal or retention' and those rights were being exercised or would have been exercised but for the removal."[8] Specifically, a petitioner must prove:

> (1) when the removal or retention took place; (2) the child's habitual residence immediately prior to such removal or retention; (3) whether the removal or retention breached the petitioner's custody rights under the law of the child's habitual residence; and (4) whether the petitioner was exercising his or her custody rights at the time of removal or retention.[9]

---

[6] *Abbott v. Abbott*, 560 U.S. 1, 5 (2010); *see also Khan v. Seemab*, No. 25-2283, 2025 WL 2582897, at *2 (E.D. Pa. Sept. 4, 2025) ("[T]he Convention ordinarily requires the prompt return of a child wrongfully removed or retained away from the country in which she habitually resides.") (internal quotation omitted).

[7] *Id.*

[8] *Khan v. Seemab*, No. 25-2283, 2025 WL 2582897, at *2 (E.D. Pa. Sept. 4, 2025) (quoting Convention, Article 3; 22 U.S.C. § 9003(f)(2)).

[9] *Yang*, 499 F.3d at 270-71.

"For purposes of the Convention, 'rights of custody' shall include rights relating to the care of the person of the child, and in particular, the right to determine the child's place of residence."[10]

Once the petitioner meets its burden, respondent may prove an affirmative defense.[11] Such defenses include a "grave risk" that the child's return would "expose the child to physical or psychological harm or otherwise place the child in an intolerable situation."[12] However, even "where a defense applies, the [C]ourt has the discretion to order the child's return."[13]

Here, Petitioner Siras has met his burden of proof, and, therefore, the child shall be temporarily returned to him and then on to France to adjudicate the custody dispute there. Siras has established first that E.J.K.B. was wrongfully retained[14] in the United States sometime after July 2025 and that, upon realizing she had been left

---

[10] *Application of McCullough on Behalf of McCullough*, 4 F. Supp. 2d 411, 414 (W.D. Pa. 1998) (quoting *Feder v. Evans-Feder*, 63 F.3d 217, 220 (3d Cir. 1995)).
[11] *Monzon*, 910 F.3d at 97.
[12] *Feder v. Evans-Feder*, 63 F.3d 217, 221 (3d Cir. 1995).
[13] *Id.* (internal quotation omitted). The ICARA provides a limitation on the Court's authority, though, stating that the Court cannot remove a child from "a person having physical control of the child unless the applicable requirements of state law are satisfied." *Application of McCullough on Behalf of McCullough*, 4 F. Supp. 2d 411, 414 (W.D. Pa. 1998). I find, for the same reasons that the court in *McCullough* found, looking to the Pennsylvania Rules of Civil Procedure and the applicable Pennsylvania laws, that the "extraordinary emergency relief" sought by petitioner is appropriate under the applicable Pennsylvania and French laws. *See McCullough*, 4 F. Supp. 2d at 414.
[14] Bah contends that Siras knew of the vacation and her plans to take E.J.K.B. to the United States, but the convention protects both against wrongful removal to another country and wrongful retention in another country. *Golan v. Saada*, 596 U.S. 666, 670 (2022) ("the Convention generally requires the 'prompt return' of a child to the child's country of habitual residence when the child has been wrongfully removed to or retained in another country.") (quoting the Hague Convention Art. 1(a)).

in the United States and would not be returning from "vacation," he objected to such removal. Second, Siras has shown that the child's habitual residence was in France until the removal. Third, petitioner has established that the removal of the child breached his custody rights because parties were in an ongoing custody dispute at the time of the removal and, pursuant to France's parental authority laws, the father has a default right to have a role in the important decisions of the child's life.[15] Fourth, petitioner was exercising his custody rights at the time of removal; he communicated with and visited the child on a regular basis, and parties were in the middle of a custody dispute with Siras seeking custody of E.J.K.B. when the secreting occurred. Bah has not brought any affirmative defenses to the proceeding and, therefore, the Court must order the child returned to the non-absconding parent and her habitual residence of France.

The Court notes that this order is extremely limited in scope; it is not to be taken as a permanent custody order or any indication about what level of custody either party should receive of E.J.K.B. The only Order of this Court is to provide Siras with temporary custody of E.J.K.B. to ensure all parties arrive at the correct

---

[15] P2 (Title IX, Article 371 and 373) ("Parental authority is a cluster of rights and duties whose finality is the interest of the child. It is vested in the father and mother until the majority or emancipation.") ("Separation of the parents has no influence on the rules and devolution of the exercise or parental authority each of the father and mother shall maintain personal relations with the child and respect the bonds of the latter with the other parent."). *See also* Article 373-2-1 ("The parent who does not have the exercise of parental authority shall keep the right and the duty to supervise the support and education of the child. He or she must be given notice of the important choices relating to the life of the child.").

custody dispute resolution forum, namely the upcoming January 2026 hearing at the Versailles Family Court to be held less than three weeks from now.[16]

Petitioner has also asked to hold all three respondents in contempt of court for allegedly violating the Court's Order of December 12, 2025.[17] The Court is not inclined to do so, finding insufficient evidence from which to conclude that the Diallos materially violated the Court's Order. Indeed, the evidence presented indicates that the Diallos did not have custody of the child at the time of the Order and, thus, could not turn her over to Siras. However, the Court will allow Petitioner Siras to submit post-trial briefing on the issue of whether costs, including attorney's fees, should be shifted to Bah under Section 11607 of the ICARA. Petitioner should do so, if he chooses to, by January 30, 2026.

## III.  CONCLUSION

Petitioner Siras will have temporary custody over E.J.K.B. until all parties can attend the January 8, 2026 custody hearing to be held in the Versailles Family Court in the Republic of France. Bah is to turn over E.J.K.B.'s travel documents, including both her French and American passports, to Petitioner Siras.

---

[16] *See Khan v. Seemab*, No. 25-2283, 2025 WL 2582897, at *1 (E.D. Pa. Sept. 4, 2025) ("The remedies available under ICARA are limited: we may order the return of a child to his or her country of habitual residence but we may not adjudicate the merits of any underlying custody dispute.").
[17] Doc. 5.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge