**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CYRIL ANDRE MARCEL SIRAS, | | No. 3:25-CV-02395 |
| Petitioner, | | (Chief Judge Brann) |
| v. | | |
| IDIATOU BAH, | | |
| Respondent. | | |

**MEMORANDUM OPINION**

**JUNE 2, 2026**

## I.    BACKGROUND

Petitioner Cyril Andre Marcel Siras ("Petitioner") filed a complaint against Respondent Idiatou Bah ("Respondent") and a petition seeking an emergency temporary restraining order, both resulting out of the wrongful removal of Petitioner and Respondent's minor child E.J.K.B. ("E.J.K.B.") to the United States.[1] After the petition was granted, Petitioner moved for the allocation of fees and costs to Respondent.[2]

The fees and costs issue is now ripe for resolution. For the reasons addressed below, Petitioner's request for fees and costs is granted in part. Petitioner is entitled to recover $14,349.93 from Respondent, consistent with the guidance provided below and in the attached Appendix.

---

[1]    Doc. 1 (Compl.).
[2]    Doc. 18.

## II.    LAW

### A.    Procedural and Factual Background

Respondent mother and Petitioner father have a child together, E.J.K.B. The parties had been involved in custody proceedings in France, but in July 2025, Respondent brought the child to the United States under the guise of a vacation to visit family.[3] Petitioner eventually became concerned when Respondent would not allow Petitioner to talk with the child over the phone, and discovered that Respondent had left the child in the United States with family while Respondent returned to France.[4]

On December 11, 2025, Petitioner filed a complaint under the Hague Convention and the International Child Abduction Remedies Act ("ICARA").[5] Petitioner sought a temporary restraining order prohibiting the removal of the child from this jurisdiction, where the child was believed to reside at the time, until the issue could be resolved by this Court.[6]

The Court granted Petitioner's preliminary motion, entering a temporary restraining order prohibiting the removal of the child from the jurisdiction of the Court pending a hearing scheduled for December 22, 2025. The Court also ordered proper service of Respondent, seizure of the child's passport, and awarded

---

[3]    Doc. 1 at ¶¶ 28, 31. This evidence was also presented at the December 22, 2025 hearing.
[4]    *Id.* at ¶¶ 37-39.
[5]    *Id*
[6]    *Id.* at 19.

temporary custody of the child to Petitioner once he arrived in the United States, given that Petitioner indicated the child was not with Respondent mother at the time.[7]

Following a hearing, the Court granted Petitioner's motion and awarded temporary custody of E.J.K.B. to Petitioner for the limited purpose of traveling with the child back to all parties' residence country of France until the imminent custody hearing there could be completed.[8]

Afterwards, Petitioner moved for reallocation of costs and fees incurred in this process to Respondent, citing the ICARA's provision mandating fee shifting.[9] The Court considered Petitioner's initial motion and, having found that Petitioner provided insufficient supporting materials, directed Petitioner to submit additional information.[10]

Petitioner has since submitted a revised fee statement addressing some of the Court's concerns.[11] Respondent has at no point provided a response to Petitioner's initial motion for attorney's fees nor to Petitioner's revised fee statement; at this

---

[7]    Doc. 5 (Ord.).
[8]    Docs. 16-17.
[9]    Docs. 18-19.
[10]   Doc. 20 (Mem. Op. and Ord.) at 5 (requiring Petitioner to submit a revised fee statement addressing enumerated concerns, including the identity, experience, and rate of each individual billing time, information and argument as to why those rates were relevant given the vicinage and type of case, information and argument as to why other claimed fees were reasonable and necessary, and an explanation of why the award of fees and expenses would not be "clearly inappropriate" given Respondent's financial situation).
[11]   Doc. 21.

point, sufficient time has passed for the Court to presume no response is forthcoming.

### B.    Legal Standard

Costs and fees are explicitly provided for under the Hague Convention on Civil Aspects of International Child Abduction and its implementing statute, ICARA.[12] ICARA provides, in relevant part, that:

> Any court ordering the return of a child pursuant to an action brought under [ICARA] shall order the respondent to pay *necessary* expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of the proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.[13]

Courts have interpreted this as requiring the normal demonstrations for attorney's fees, namely the reasonableness and lodestar analysis, with an additional determination of whether the requested fees and costs were *necessary* for the return of the child.[14] Once Petitioner establishes necessary costs, then the burden shifts to

---

[12]   22 U.S.C. § 9007.

[13]   *Id.* at § 9007(b)(3) (emphasis added); *Hirts v. Hirts*, 152 F. App'x 137, 139-140 (3d Cir. 2005).

[14]   *See, e.g., Aldinger v. Segler*, 157 F. App'x 317, 318 (1st Cir. 2005) (noting that "the court also has the obligation to determine whether the requested fees and costs were 'necessary' to secure the children's return."); *Fuentes-Rangal v. Woodman*, 2:14-CV-00005, 2015 WL 12999707, at *1-2 (N.D. Ga. July 29, 2015); *Idkeidek v. Idkeidek*, No. 2:25-CV-02903, 2026 WL 893187, at *1-3 (W.D. Tenn. Apr. 1, 2026); *Gaston v. Gutierrez*, No. 6:24-CV-1411, 2025 WL 2694981, at *2-3 (M.D. Fla. May 5, 2025) (Price, M.J.); *Paulus v. Cordero*, No. 3:12-CV-986, 2013 WL 432769, at *6 (M.D. Pa. Feb. 1, 2013) (applying the normal lodestar analysis for ICARA fees); *Whallon v. Lynn*, 356 F.3d 138, 140 (1st Cir. 2004) (noting that, in ICARA cases, district courts have "broad discretion" to determine fees).

Respondent to show that an award would be clearly inappropriate, should they raise such arguments.[15]

### C.    Analysis

As the Court previously ordered the child returned pursuant to the Hague Convention,[16] ICARA's fee shifting provision is applicable here. Petitioner seeks to recover a variety of costs and fees, including: filing costs, transportation and lodging fees, private investigator fees, translation fees, and attorney's fees. Each is addressed in turn.

### 1.    Filing & Translation Fees

Petitioner seeks to recover $405 for "Federal Filing Fees – Complaint."[17] Petitioner also seeks to recover $200 for the $50/hour translation services of Andrew Stafford used at trial.[18] The Court finds both of these fees to be both reasonable and necessary, given that the court proceeding was required to effectuate the return of the child and Petitioner's native language is French.[19] Accordingly, the Court will award $605 for filing and translation fees.

---

[15]  *Cillikova v. Cillik*, No. 15-2823, 2016 WL 541134, at *5 (D.N.J. Feb. 9, 2016) (Wettre, M.J.).
[16]  Doc. 16.
[17]  Doc. 21-4; Doc. 19-2 at 22 (filing fee receipt).
[18]  Doc. 19-2 at 29 (receipt of Andrew Stafford payment).
[19]  *See Isais v. Araque*, No. 23-935, 2023 WL 11228077, at *5 (D.N.J. Nov. 30, 2023) (Wettre, M.J.) (finding the reimbursement of filing fee reasonable and necessary); *Paulus ex rel. P.F.V. v. Cordero*, No. 3:12-CV-986, 2013 WL 432769, *4-5 (M.D. Pa. Feb. 1, 2013) (awarding translation services).

The translation services at trial did not appear to be, in the Court's view, particularly high-quality given Petitioner had an abundance of confusion surrounding nearly each interpretation

### 2.    Hotel & Lodging Costs

Petitioner also requests costs associated with travel: Petitioner's flights to and from France; the flight back to France for E.J.K.B.; $200 for the "car to Newark Airport;" one room at the "ESA Suites" from December 17 to 21, 2025; two rooms at the Residence Inn in Williamsport from December 21 to 22, 2025; one room at the Hampton Inn in Bethlehem from December 22 to 23, 2025; and $193.60 for mileage and tolls from Williamsport to Bethlehem. The Court will categorize these costs as airfare, hotels, and automobile transit.

First, the airfare. Petitioner requests $1,725.00 for flights to and from France for himself and $1,116 for the flight back to France with the minor child.[20] Flight reimbursements are appropriate here, as the hearing was held in the Court's jurisdiction and Petitioner was located in France.[21] Additionally, while the flights are indeed expensive, for a last-minute international flight near the holidays, the cost is not unreasonably high. The booking is in economy, and done in round trip pricing.[22] Accordingly, the Court will award Petitioner $1,725 and $1,116 respectively for these flights, totaling $2,841 for airfare.

---

given. However, with the low price of services, this cost is reasonable and appropriate given the nature of the proceeding. *See Cillikova*, 2016 WL 541134, at *3 (finding the translation costs of $383.89 reasonable).

[20]  Doc. 19-2 at 26 (receipt of the return flight for E.J.K.B.) and 28 (receipt of Petitioner's flights). Petitioner's flights were listed in Euros, but have been converted to USD in Petitioner's summary invoice. Doc. 19-2. The Court has finds the conversion reasonable, so will award the requested converted amount.

[21]  *Distler v. Distler*, 26 F. Supp. 2d 723, 728 (D.N.J. 1998) (awarding flights).

[22]  Doc. 19-2 at 27 (itinerary).

Next, the Court addresses the claimed hotel costs. Hotel costs incurred in attending the ICARA proceeding, where necessary and appropriate, have been found awardable.[23] Petitioner requests: $365.16 for one room for four nights at ESA Suites from December 17 to 21, 2025; $378.78 for two rooms at the Residence Inn in Williamsport from December 21 to 22, 2025; and $176.41 for one room at the Hampton Inn in Bethlehem from December 22 to 23, 2025.

The hearing was held on December 22, 2025 in Williamsport, Pennsylvania. Given that this hearing required international and domestic travel, Petitioner's request for multiple hotel nights is reasonable in part. However, a hotel stay beginning the Wednesday before a Monday hearing is not entirely reasonable.[24] Given the circumstances of this hearing, the Court views as appropriate and awardable hotel costs for December 20 to 23, which gives a day for both

---

[23] *Neves v. Neves*, 637 F. Supp. 2d 322, 344 (W.D. N.C. 2009); *Soulier v. Matsumoto*, 2022 WL 17250549, No. 20-4720, at *9 (D.N.J. Nov. 28, 2022) (Hammer, M.J.) (on partial reconsideration at 2023 WL 11987858 lowering the award for failure to consider Respondent's poor financial situation); *Paulus*, 2013 WL 432769, at *3 (reducing lodging expenses from four to two nights).

[24] Petitioner argues that these hotel stays were necessary due to the Court's order that, once Petitioner arrived in the area, he should have custody of E.J.K.B. However, as other Courts have held, "[a]lthough the Court can certainly appreciate Petitioner's desire to spend time with his [c]hild[]," visitation costs are not awardable. *Soulier v. Matsumoto*, 2022 WL 17250549, at *9; *Aldinger v. Segler*, 157 F. App'x 317, 318 (1st Cir. 2005). Only those expenses necessary to the return of the child may be awarded, and it was not necessary for Petitioner to come several days earlier than the proceeding required. *See also Gaston v. Gutierrez*, No. 6:24-CV-1411, 2025 WL 2694981, at *6 (M.D. Fla. May 5, 2025) (Price, M.J.); *Escobar Villatoro v. Figueredo*, 8:15-CV-1134, 2015 WL 6150769, at *3 (M.D. Fla. Oct. 16, 2015). Indeed, once Petitioner arrived, he did not receive custody of the child; instead, Respondent brought the child to the hearing. While Petitioner may have *perceived* an early arrival as necessary for the return of the child, his early arrival was not *actually* necessary for the child's return.

international arrival and departure as well as domestic travel to and from the hearing.[25] Accordingly, the Court will award the hotel costs requested from December 20 to 23, 2025.

Additionally, Petitioner requested two rooms, one for him and one for counsel, at the Residence Inn in Williamsport from December 21 to 22, 2025. Petitioner explained the need for two rooms in Williamsport the night before the proceeding was for caution regarding winter weather and due to Petitioner's counsel's medical need to avoid multiple lengthy car drives in one day.[26] The Court finds this request reasonable and necessary for the return of the child.

Examining the receipts, the Court calculates the awardable lodging costs now. First, the ESA suite receipt for December 20 lists the total room cost as $108.89.[27] Petitioner and his counsel then traveled to Williamsport for the hearing on December 22, 2025, submitting two rooms at the Residence Inn from December 21 to 22, 2025 at $165.39 per room per night. In the overall invoice, Petitioner claims this as $378.78,[28] but $165.39 plus $165.39 totals to $330.78. Finally, Petitioner submits the receipt for one night at the Hampton Inn and Suites in Bethlehem from December 22 to 23, 2025. Petitioner claims this total as $176.41, but the Court notes that $12

---

[25]  The Court is awarding extra days for international travel given the distance from the Court to a major international airport.
[26]  Doc. 21 at 12-13.
[27]  Doc. 19-2 at 31.
[28]  Doc. 21-4.

of this receipt came from charges listed as "Suite Shop."[29] With no explanation for this $12 charge, which appears to be a charge from the hotel store or minibar, the Court will not award the $12. Thus, the awardable Hampton Suites cost totals $164.41. In sum, the awardable lodging costs are $604.08.

Finally, Petitioner requests $200 for "Car to Newark Airport (cash to driver)" and $193.60 for mileage and tolls for the round trip from Williamsport to Bethlehem, reimbursing 268 miles at .70 per mile with $6.00 of tolls. The Court finds these costs to be reasonable and appropriate, particularly in light of Petitioner's counsel's willingness to use her personal vehicle and avoid the costs of a rental car. Accordingly, Petitioner will be awarded $393.60 for automobile transportation fees.

In total, Petitioner's awardable transportation and lodging fees are $2,841 for airfare, $604.08 for lodging, and $393.60 for automobile transportation fees. This results in $3,838.68 in transportation costs.

### 3.    Private Investigator Fees

Next, Petitioner submits that he should be entitled to $2,925 for "French Connection Research – Private Investigator." However, Petitioner has not met his burden to show that such costs were necessary to the return of the child, so the Court declines to award expenses related to the Private Investigator.

---

[29]    Doc. 19-2 at 34.

Petitioner submits a receipt for this cost with three line-items: "Enquete New York, communication, rapport," "Surveillance Pennsylvanie Gregory Myers," and "Surveillance Pennsylvanie."[30] Not only are these items in French, but Petitioner also provides essentially no explanation or argument for the details of these expenses nor to why these expenses were "necessary" to the return of the child.

Petitioner explained that Petitioner retained the services of a Private Investigator in New York who "took the lead on locating the child," and, after investigation, reported to Petitioner that the child was staying in Monroe County.[31] The Private Investigator "attempted to obtain sighting of the child in Monroe County" but could not.[32] It was made immediately clear at the hearing that the child was not residing in Monroe County, meaning the Private Investigator's work was entirely unhelpful to the case. Moreover, the Private Investigator's "evidence" of the child's residing in Monroe County appeared to have been provided by Petitioner himself, as Petitioner believed the child was staying there because of other information he possessed.[33]

Petitioner has established only that the investigator visited Respondent's mother's residence in New York City and was told the child was not present, which

---

[30]  Doc. 19-2 at 24.
[31]  Doc. 21 at ¶¶ 10-13.
[32]  *Id.* at ¶ 12.
[33]  *Id.* at ¶¶ 11-13 ("Petitioner provided available evidence that the minor child had been in Monroe County in the fall, only two months before preparing the Hague Convention matter, and believed that the child was staying there because Second and Third Respondent arranged for Petitioner to speak with the child apparently in their home in Monroe County.").

was untrue, and then attempted unsuccessfully to surveil the child in Monroe County.[34] The Court does not see how these unsuccessful surveillance efforts helped return the child to France in any way. Indeed, it appears that Petitioner was independently aware of individuals with whom the child may be residing and was able to contact them without any additional information provided by the Private Investigator.[35] As such, Petitioner has not met its burden to show that the private investigator fees were necessary to the return of the child.

Additionally, Petitioner has not provided any legal authority for the award of private investigator fees in such cases, nor has Petitioner explained why such costs were reasonable. For instance, Petitioner has not provided any information regarding similar rates of private investigators in the area. Moreover, the line items listed in the receipt for surveillance[36] are akin to impermissible overbroad block billing,[37] as Petitioner has not provided information explaining the factual circumstances for each of the charges. The Court accordingly declines to award Petitioner the fees

---

[34]   Doc. 21 at ¶¶ 11-13. This is despite the Court's request in the prior Memorandum Opinion and Order that Petitioner should explain why the investigator fees are reasonable and necessary "given that the investigator's research seemingly did not provide the accurate location of the child based on testimony received at the December 22, 2025 hearing." Doc. 20 at 5, n.12. The Court gave Petitioner a second chance to provide the information that would justify an award of such fees here. Petitioner has not done so.

[35]   Doc. 21 at ¶¶ 11-13. While Respondent did not tell Petitioner where the child was, neither did the Private Investigator discover that information.

[36]   Doc. 19-2 at 24.

[37]   *PHL6 LLC, v. Pennbrook Portfolio CC, LLC*, No. 25CV247, 2026 WL 906166, at *7 (E.D. Pa. Apr. 2, 2026) ("Plaintiff has attached only an exhibit listing the total invoice amount and has not provided billing records, the hours worked, the hourly rates charged, or any affidavit addressing the reasonableness of the requested fees. On this record, an award of attorneys' fees is not warranted, as Plaintiff has failed to meet its burden to justify the fee request.").

incurred with the hiring of a private investigator service, as Petitioner has not shown the costs were necessary to the return of the child nor met its prima facie case to show that the costs were reasonable.

### 4.    Attorney's Fees

"A party seeking attorney['s] fees bears the ultimate burden of showing that its requested hourly rates and the hours it claims are reasonable."[38] "To initially satisfy this burden, the fee petitioner must submit evidence supporting the hours worked and rates claimed."[39] Billing records should be sufficiently detailed to allow the Court to determine if the hours claimed are reasonable for the work performed.[40]

The Court uses the lodestar method to evaluate such a request for attorney's fees, which involves multiplying the number of hours reasonably expended by each attorney by a reasonable hourly billing rate.[41] "To inform and assist the court in the

---

[38]  *Interfaith Comm. Org. v. Honeywell Intern. Inc.*, 426 F.3d 694, 703 n.5 (3d Cir. 2005) (internal quotation and citation omitted). In the revised submission, Petitioner argues that it is Respondent's burden to prove the requested rates are unreasonable. Doc. 21-5 at ¶ 31. Not so. *See Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 237 (3d Cir. 2012). While true that, under ICARA, the Respondent has the burden to prove such an award is clearly inappropriate if they choose to raise as much as an affirmative defense, the Petitioner must always demonstrate such amount is reasonable. *Id.* The Court clearly enumerated as much to Petitioner in the Court's most recent Memorandum Opinion. Doc. 20 at 2. Instead of submitting such materials to show that the rate is reasonable, Petitioner continued to argue that it is Respondent's burden.

[39]  *Honeywell Intern. Inc.*, 426 F.3d at 703 n.5 (internal quotation and citation omitted).

[40]  *Gelis v. BMW of North Am., LLC*, 49 F. 4th 371, 379-380 (3d Cir. 2022); *PHL6 LLC*, 2026 WL 906166, at *7 (where an invoice exhibit without billing records was insufficient to justify an award of fees).

[41]  *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010); *Distler v. Distler*, 26 F. Supp. 2d 723, 727 (D.N.J. 1998); *Fridlund v. Spychaj-Fridlund*, 2009 WL 4168192, at *1 (E.D. Ky. Nov. 23, 2009) (collecting cases).

exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."[42] However, without more, an attorney's own affidavits regarding the reasonableness of her rate are *insufficient* to independently justify an award of fees.[43] Where counsel fails to properly support the hourly rate requested, reduction is appropriate.[44] Should the requesting party fail to meet the prima facie case of establishing the reasonableness of fees, the district court "'has the discretion to determine what award is reasonable.'"[45]

Additionally, in ICARA cases, only those fees that Petitioner has shown were necessary to the return of the child may be recovered.[46] Hours devoted to matters regarding the underlying custody case would not be recoverable, unless the petitioner can prove the work was necessary for returning the child.[47] Moreover,

---

[42]  *Young v. Smith*, 269 F. Supp. 3d 251, 267 (M.D. Pa. 2017) (Brann, J.).

[43]  *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *Holmes v. Millcreek Twp. Sch. Dist*, 205 F.3d 583, 595 (3d Cir. 2000) (overruled in part on other grounds).

[44]  *See, e.g., Campana v. Muir*, 615 F. Supp. 871, 881 (M.D. Pa. 1985); *Drake v. Perrin*, 593 F. Supp. 1176, 1178 (E.D. Pa. 1984).

[45]  *Holmes v. Am. HomePatient, Inc.*, 2025 WL 321829, at *3 (M.D. Pa. Jan. 28, 2025) (Brann, J.) (quoting *Carey v. City of Wilkes-Barre*, 496 F. App'x 234, 237 (3d Cir. 2012)); *Borrell v. Bloomsburg Univ.*, 207 F. Supp. 3d 454, 510 (M.D. Pa. 2016).

[46]  *See supra*, notes 14-15.

[47]  *See Clark v. Board of Educ. Of Twp. Of Neptune*, 907 F. Supp. 826, 830 (D.N.J. 1995) (citing to *Gulfstream III Assocs. Inc. v. Gulfstream Aerospace Corp.*, 995 F.2d 414 (3d Cir. 1993)).

where an attorney's claimed fees are matters properly tended to by paralegals or legal assistants, the Court is justified in awarding a lower rate.[48]

### a.    Reasonable Rate for Linda Shay Gardner

Petitioner has failed to meet its prima facie case to show that Attorney Linda Shay Gardner's requested rate of $450 per hour is reasonable. First, despite the Court's instruction to do so, Petitioner has not provided the necessary legal support for the requested rate. Petitioner has not provided similar cases in similar jurisdictions awarding a similar rate; instead, Petitioner cites few cases in support of its claimed fees, but none addressing the pertinent issue.[49]

Petitioner describes *Neves v. Neves*, a case decided in the Charlotte Division of the Western District of North Carolina, as an instance where Attorney Gardner's hourly rate of "$325 per hour . . . [was] found reasonable."[50] Quite the contrary. In *Neves*, the Court noted that "the Petitioner did not file any affidavits from other attorneys regarding the prevailing market rates of attorneys in the [area] for similar cases involving the Hague Convention," finding "the evidence supplied by the

---

[48] *Loughner v. Univ. of Pgh.*, 260 F.3d 173, 180 (3d Cir. 2001); *In re Domus BWW Funding, LLC*, 653 B.R. 745, 764 (E.D. Pa. 2023); *Soulier v. Matsumoto*, 2022 WL 17250549, at *5.

[49] *Rath v. Marcoski*, 898 F.3d 1306 (11th Cir. 2018) (establishing that the Petitioner must prove the fees are clearly inappropriate if she so raises the defense, but nowhere addressing the rates appropriately awarded); *Souratgar v. Lee Jen Fair*, 818 F.3d 72 (2d Cir. 2016) (same); *Hirts v. Hirts*, 152 F. App'x 137, 139-140 (3d Cir. 2005) (affirming the District Court's award of Attorney Gardner's "full hourly rate of $200.00 for office work and $225.00 for court appearances.").

[50] Doc. 21-5 at ¶ 28. Note, there are multiple paragraphs labeled as ¶ 28. The Court is referring to the one on page 7 on Doc. 21-5.

Petitioner's attorneys . . . inadequate to support the attorney's fee award sought" and *reducing Attorney Gardner's rate* to $275 per hour.[51] The Court is baffled by Petitioner's mischaracterization of a case where counsel's rate was the subject matter. Similarly, in *Hirts v. Hirts*, which Petitioner cites in support, the Third Circuit affirmed in part the District Court's award of Attorney Gardner's "full hourly rate of $200.00 for office work and $225.00 for court appearances."[52] Neither of the cases provided by Petitioner awarded the claimed $450 an hour.

Moreover, Petitioner has not provided the necessary factual information to support her rate. Attorney Gardner submitted an affidavit detailing her experience and her assertions that her rate is reasonable. However, as noted above, an attorney's own affidavit regarding the reasonableness of her rate is insufficient to justify a rate.[53] It is *ipse dixit*. The Court informed Petitioner of this very fact and gave Petitioner a second chance to correct the deficiencies in Petitioner's fee submission.[54] Petitioner declined to do so. Instead, Petitioner submits in her affidavit that she "reached out" to other counsel and details their rates.[55] This information does not describe those attorneys' backgrounds, experience, and is not submitted in a separate affidavit from those attorneys. Petitioner also has not shown that those

---

[51] *Neves v. Neves*, 637 F. Supp. 2d 322, 342 (W.D. N.C. 2009).
[52] *Hirts*, 152 F. App'x at 139-140 (affirming in part *In re Application of Hirts*, 2004 WL 1588227, at *1 n.1 (E.D. Pa. July 13, 2004)).
[53] *See supra*, note 43.
[54] Doc. 20 at 3 n.5.
[55] Doc. 21-5 at 5.

attorneys practice in this vicinage; one she describes as practicing in "New York" and the other in "Maryland."[56] These offhanded references are inadequate to support counsel's claimed rate for this type of matter in this vicinage.

As support for her rate, Petitioner submitted the "Fitzpatrick Matrix" and the "Community Legal Services" range of hours; the former details the rates for complex federal litigation in the District of Columbia, the latter for Philadelphia law firm rates.[57] Not only was this case far afield from "complex federal litigation," Williamsport's market is different in kind than the rates for the District of Columbia and Philadelphia. Neither of these submissions provide support for Petitioner's claimed rate of $450 per hour in the Middle District of Pennsylvania.

As Petitioner has failed to meet the prima facie case to establish a reasonable rate for this type of case in this type of vicinage, the Court must now independently determine a reasonable rate for the work performed in this case. For the following reasons, I find that Attorney Gardner's rate in this case should be reduced to $300 per hour.

I have previously set the range of reasonable hourly rates in the Williamsport vicinage, most recently in *Holmes v. American HomePatient, Inc.*[58] In *Holmes*, I determined that the range of reasonable hourly rates in Williamsport consisted of

---

[56]    *Id.*
[57]    Doc. 21-7, Doc. 21-8.
[58]    2025 WL 321829, at *10.

rates between $230 to $375.[59] Other courts have addressed the reasonable rates for ICARA cases, and while many are outside this vicinage, these cases offer guidance for this Court's determination.[60]

First, there are many factors justifying an award at the higher end of the Williamsport rate in this case. Attorney Gardner graduated from Temple University School of Law in 1995 and has been practicing since, totaling over thirty years of legal experience.[61] Moreover, Attorney Gardner specializes in international family law and ICARA; she has been qualified as an expert on international family law and child abduction and gives presentations to other lawyers both domestically and internationally on issues of international  family law issues.[62] Additionally, the nature of the case justifies a higher award, as this was an exigent matter requiring immediate action on several occasions.[63]

Furthermore, the Court was quite satisfied with Attorney Gardner's performance in the case, having observed her presentation firsthand. Attorney

---

[59]  *Id.*

[60]  *See Paulus ex rel. P.F.V. v. Cordero*, 2013 WL 432769, at *8 (M.D. Pa. Feb. 1, 2013) (finding the hourly rates of $165, $260, and $300 reasonable for varying ranges of experience in Wilkes-Barre); *Best v. Best*, 1:15-cv-81, 2016 WL 5402717, at *3 (W.D. Pa. Sept. 28, 2016) (finding an hourly rate of $199.72 reasonable); *Isais v. Araque*, 2023 WL 11228077, at *3-4 (D.N.J. Nov. 30, 2023) (Wettre, M.J.) (finding a $400-$425 hourly rate reasonable for the district of New Jersey); *McElligott v. Mcelligott*, No. 23-3175, 2023 WL 6923493, at *3 (D.N.J. Oct. 19, 2023) (accepting a rate of $200 per hour as reasonable); *Soulier v. Matsumoto*, 2022 WL 17250549, at *3 (finding $300 and $200 per hour reasonable);

[61]  Doc. 21-6 at 1-3.

[62]  *Id.* at 2.

[63]  For instance, the Court requested immediate submission on the issue of whether the Court could order passports seized, which was a tight turnaround for counsel.

17

Gardner received a swift, favorable result for her client. Attorney Gardner's declaration indicates several areas where she reduced costs for her client, including using French-speaking friends to translate conversations and meeting with Petitioner over meals without billing.[64]

Yet, there are also several factors justifying a lower hourly rate in this case.[65] While exigent, this was a relatively routine ICARA matter. There was only one hearing in this matter lasting a few hours, and, given Attorney Gardner's experience in this area, minimal research should have been necessary for the task. The majority of hours billed by Attorney Gardner, upon review of Petitioner's hours log, involve emails or communications with Petitioner himself. Most of the hours logged were quasi-administrative or logistical tasks. There was not extensive motion practice in this case, as Respondent made no motions and gave no responses to Petitioner's submissions.

Additionally, as discussed above, Petitioner has not provided any materials to support the award of fees besides her extensive experience. Petitioner only submitted Gardner's own affidavit, and did not provide attestations from local practitioners that

---

[64]    Doc. 21 at ¶¶ 27, 31.

[65]    The Court also notes Respondent's pro se status, and heard testimony at trial that she does not have significant resources and struggles to earn income. However, because Respondent has not placed any materials on the record to indicate that an award would significantly impact her ability to care for the child, the Court does not take into consideration her perceived financial situation.

Gardner's work is standard in the field or that the rate is reasonable.[66] The case law is clear that such a submission is insufficient.[67] The only comparable cases Petitioner submitted resulted in awards of $275 and $225, far below counsel's claimed rate of $450. Moreover, the fee submission's abysmally disorganized nature has required the Court to recalculate each line submission.[68] As noted previously, where award submissions are insufficiently supported, reduction is appropriate.[69]

The Court also notes the striking similarity of counsel's deficiencies in this case to the very case cited by Petitioner, *Neves v. Neves*. In *Neves*, the court explicitly found that the same deficiencies at issue here, namely counsel's failure to "file any affidavits from other attorneys regarding the prevailing market rates of attorneys in the [area]," rendered counsel's submissions inadequate to support the fee award sought.[70] Counsel's disregard of the guidance from both the Western District of North Carolina in *Neves* and this Court's previous Memorandum Opinion suggests

---

[66] These deficiencies are especially frustrating where the Court gave counsel a second chance to bring the submissions up to par.

[67] *See supra* note 43.

[68] When asked to do so, counsel submitted an excel sheet hours log instead of adding the rates and identities of billing individuals to the existing hours log. Doc. 21-2. This excel sheet summary successfully added the rates, but excluded the description of why the hours were incurred. So, the Court had to return to the original chart and recalculate the rates of every line entry billed to determine who was billing what. The Court cannot overstate the frustration brought about by this task.

[69] *See supra*, note 44. When a party submits an inadequate fee petition, a district court may reduce the award or, in some circumstances, outright deny fees. *See Bair v. Purcell*, No. 1:04-CV-1357, 2009 WL 77828, at *18 (citing *Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983)).

[70] 637 F. Supp. 2d at 341-42.

an intentional indifference to the required materials for an award of attorney's fees, and weighs against a high rate.

In sum, and considering all the aforementioned factors, the Court finds that a rate of $300 per hour is reasonable for Attorney Gardner's work in this case.[71] This rate is appropriate given Attorney Gardner's experience, her appearance in the Williamsport vicinage, Petitioner's deficient fee submission, and the nature of the case.

### b.    Reasonable Rate for Attorney Hilary Mack

Next, Petitioner requests the award of fees billed at $300 per hour by the associate attorney "Hilary Mack."[72] Petitioner's excel sheet indicates a total of six such hours, but the hours log only appears to provide 4.5 total hours billed at $300 per hour[73] and .4 total hours billed at a rate of $325 per hour.[74] Petitioner did not even identify Mack as a billing individual in the original fee submission, and only

---

[71]    Given that ICARA explicitly mandates the shifting of fees, the Court considered but ultimately declined to hold that Petitioner had waived fees entirely due to the deficiencies in the fee submission. The Court also considered, and also ultimately declined, to award the same amount awarded in the comparator cases Petitioner provided.

[72]    Doc. 21-5 at 4.

[73]    Doc. 19-2 at 10 ("Invoice 1," the invoice from January 31, 2026) listing two entries for 1.5 hours at $300 per hour; Doc. 19-2 at 18 ("Invoice 3," the invoice from December 20, 2025) listing 1.5 hours at $300 per hour.

[74]    Doc. 19-2 at 15 ("Invoice 3," the invoice from December 20, 2025). On the updated excel sheet, these two entries are attributed to Attorney Gardner's column, reduced for some reason unknown to the court to $325 per hour.

The Court must presume that the remaining hours come from fees incurred in developing this fees litigation. The Court presumes this because no entry log of any additional fees was submitted. The Court declines to award any fees without proper hours logs, and, as discussed below, will decline to award fees on fees due to the deficiency of counsel's submissions.

did so following the Court's directive. However, Petitioner failed to provide sufficient information justifying the award of the requested rate for Mack's work.

The sum total of information Petitioner provided regarding Mack is contained in one line: "the Associate Attorney, Hilary Mack, has completed work in many Hague Cases and has at least fifteen years of experience in these cases [and] bills at $300 per hour."[75] This line provides no information from which the Court can conclude that an award of fees for Mack's requested rate is justified. Petitioner did not submit a resume for Mack and did not provide other cases where Mack's fees have been awarded. And, just as Petitioner failed to provide affidavits in support of reasonable rates for Attorney Gardner, so too does that deficiency weigh against Mack's fees.

Due to the patent insufficiency of information supporting an award for Mack's fees, and given that the Court has no information as to Mack's background, the Court will award the bottom of the range for reasonable Williamsport rates, which I have previously set at $230 per hour.[76] However, the Court will only award the hours submitted in a billing log with sufficient detail as to justify an award; the additional

---

[75]  Doc. 21-5 at ¶ 18(a).
[76]  *Holmes*, 2025 WL 321829, at *9.

1.5 hours which has appeared in Petitioner's second submission without a supplemental hours log will not be awarded.[77]

### c.      Reasonable Rate for the Paralegal

Next, Petitioner requests fees awarded for hours expended by "the paralegal" at a rate of $150 per hour.[78] Petitioner does not provide the identity of the paralegal and, as with Mack's fees, Petitioner offers only one line regarding the paralegal's experience: "[t]he paralegal, who has worked in the Gardner firm for approximately seven years, has the skills necessary to manage the technical aspects of filings and service of process and bills."[79]

Similar to the fees requested for Mack, without information regarding the paralegal's relevant experience and background to meet Petitioner's prima facie case, the Court will award the bottom of the reasonable range for paralegals in the area. In *Holmes*, I noted that other cases in this district have established the range for paralegals as between $75 and $170 per hour.[80] Accordingly, I will reduce the paralegal's rate in this case to $75 per hour.

---

[77]   The Court cannot overemphasize enough that an excel sheet without explanation for each entry falls far short of a proper fees submission. Only those hours logged with some sort of explanations will be awarded.

[78]   Doc. 21-5 at ¶ 18(b).

[79]   *Id.*

[80]   *Holmes*, 2025 WL 321829, at *10 (collecting cases).

### d.    Requested Fees for Helene Carvallo

Finally, Petitioner submits one entry for the fees incurred by Helene Carvallo, Petitioner's French Counsel. The total of $4,500 is listed on the summary invoice sheet for Carvallo's work.[81] Despite checking several times, the Court finds no hours log for Carvallo's work. The only indication of what Carvallo charged Petitioner is from one line on the total invoice.

This is an egregious form of block billing. Petitioner has not provided any indication of the total amount of hours worked, nor what those hours were incurred for. As the Court held in the previous Memorandum Opinion, by declining to provide any of the information necessary for the Court to conduct the lodestar method, Petitioner has waived the right to recover fees incurred by Carvallo.[82]

The Court finds it appropriate to address another issue here, and will touch on it again below. Throughout the existing hours log for the Gardner law firm, there are several instances of reported billing for communications sent to Carvallo.[83] For instance, Petitioner logged hours spent to "communicate with Petitioner's counsel in France . . . to provide a copy of the Court's Order and an explanation of the status of the return of the Petitioner and minor child to France." Petitioner has failed to

---

[81]    Doc. 21-4 (Exhibit D).
[82]    Doc. 20 at 4.
[83]    *See, e.g.,* Doc. 19-2 at 16 ("Email to Helene Carvallo in France re strategy").

explain why these communications to Carvallo were necessary for the return of the child, and they will be excised.[84]

To the extent that the communications to Carvallo were incurred for the purpose of keeping Carvallo abreast for Petitioner's French custody case, that case is separate from the ICARA proceeding, and Petitioner has not shown why work incurred for the separate proceeding would be necessary for the return of the child. To the extent that Carvallo was in some way contributing to the instant proceeding, Petitioner has not met his prima facie case to show that these fees were reasonably incurred. Petitioner has not provided any information about Carvallo's background, experience, education, or what type of work she was performing. Petitioner has not explained why counsel was communicating with her nor how that furthered the child's return.

Additionally, Petitioner has not explained why these communications with Carvallo would not be redundant to the work of the Garnder firm.[85] Awarding fees for the time spent informing French counsel about the work American counsel was doing would be excessive and duplicative, particularly where the Court has no

---

[84]   *Cf Distler*, 26 F. Supp. 2d at 728 (where Petitioner explained the specific ways foreign counsel assisted the litigation which was not redundant to the work performed by domestic counsel, award of fees was appropriate. However, the Court cut the fees by one third to account for the work relating to the foreign custody case).

[85]   *McKenna v. City of Phila.*, 582 F.3d 447, 455 (3d Cir. 2009) (holding that courts should exclude redundant hours); *Napier v. Thirty or More Unidentified Federal Agents, Employees or Officers*, 855 F.2d 1080, 1094 (3d Cir. 1988) (noting that overlapping defenses are not awardable for duplicative or excessive effort).

information from Petitioner to justify Carvallo's involvement here. Accordingly, the Court will excise fees incurred solely in communicating with Carvallo.

### e.  Reasonable Hours

After calculating the reasonable hourly rates for each billing individual, the Court will now calculate which hours were reasonably incurred, as it is the fee petitioners' duty to establish that the number of hours expended was reasonable.[86] There are several categories of claimed fees that will be excised, described broadly by category below.

The Court also notes that in the revised fee submission, the total amount of fees sought for the work of the Gardner Law Office increased from the original invoice without a supplemental description of hours.[87] There are also a few hours logged in March on the excel sheet, while the billing logs provided only run through January.[88] Only those fees logged with entries describing the work performed will be awarded.[89] As the revised fee submission contained no such hours log, only fees submitted in the original log will be considered.

---

[86] *McKenna*, 582 F.3d at 455; *Rayna P. v. Campus Comm. Sch.*, 390 F. Supp. 3d 556, 561 (D. Del. 2019) ("The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable. To meet its burden, the fee petitioner must submit evidence supporting the hours worked and the rates claimed.") (internal quotations omitted)).

[87] Doc. 21-4 (listing two amounts sought for two different date ranges, one at $21,100 and the other at $1,907.50).

[88] Doc. 21-3.

[89] *See In re Art Shirt Ltd., Inc.*, 30 B.R. 318, 320 (E.D. Pa. 1983) (only allowing entries with sufficient itemization to justify an award).

The Court has created a table, constructed from the invoices / original billing log provided in Doc. 19-2, to calculate the awardable fees. This table, attached as Appendix A, depicts the date and description of logged fees, whether the fees are reduced or excised in total, the reason for the reduction or excision demarcated by a letter corresponding to a below rationale, the individual billing the hours, the claimed rate, the ultimately awarded rate, the claimed hours, and the total award for the entry.

As I have previously reduced each of the individuals' fees to what I have determined to be a reasonable rate, $300 for Attorney Gardner, $230 for Attorney Mack, and $75 for the paralegal, such reductions will be listed as "RR," meaning reasonable rate, for the rationale. The other excision categories, discussed in length below, are as follows: A for fees relating to calls with Carvallo, A(1) when reduced in part; B for fees relating to the private investigator; C for fees on fees; D for travel fees; and E for fees properly billed at a paralegal rate. These are the categories for which Petitioner has failed to establish that the hours worked were reasonably incurred. Additionally, the individuals billing will be demarcated by a "G" for Gardner, "M" for Mack, and "P" for Paralegal.

### i.    "A" and "A(1)" – Carvallo Fees

As discussed above, Petitioner has not shown why communications with French counsel Carvallo were necessary to the return of the child and not redundant to the work of the Gardner law firm. Accordingly, fees claimed on the hours log

26

related to communications with Carvallo will be excised, as Petitioner has not met its burden to prove the hours worked were reasonably incurred. Any such fees will be marked on the hours log as excised for reason "A."

Several of the fee entries involving Carvallo have mixed entry motivations; for example, logging for "Detailed Email to Cyril Siras; Helene Carvallo."[90] For any mixed entries, the Court sees it appropriate to reduce the entry by 50%. The Court has no way of parsing which of these entries were motivated primarily by discussion with Carvallo and which were motivated by other legitimate work. Given that Petitioner has the burden to show such fees are reasonable and necessary, and that Petitioner has not done so, the Court views a 50% reduction for such mixed fees as appropriate. These fees are marked on the table as reduced for reason "A(1)." In those situations, the reduced hourly rate has been additionally multiplied by .5 to account for this reduction.[91]

### ii.   "B" – Fees Incurred For Work Involving the Private Investigator

Additionally, Petitioner claims fees for communications with the private investigator.[92] As discussed above, Petitioner has not shown any way in which the private investigator's work was necessary for the return of the child, as the Private

---

[90]   Doc. 19-2 at 17.

[91]   For instance, where .2 hours are claimed at a rate of $450 for a mixed entry with Carvallo, the Court has reduced the rate first to $300 for the reasonable rate and then by half again to $150. *See Distler*, 26 F. Supp.2d at 728 (doing similarly).

[92]   Doc. 19-2 at 15 ("Call with PI in Allentown.").

Investigator's attempts to locate the child were unsuccessful. Moreover, Petitioner has not met his burden to show that fees incurred by the attorneys for communicating with the private investigator were reasonably incurred; for instance, Petitioner has not provided other cases where such fees were awarded, nor an indication of how many hours are typically billed for such communications. Accordingly, these fees will be marked on the table as excised for reason "B."

### iii.    "C" – Fees on Fees

Next, Petitioner has documented some fees incurred in preparing the fee submission,[93] known as "fees on fees." These fees may be recoverable in certain cases; in awarding them, courts must consider the reasonableness of such a request and whether the substance of the work merits an award of fees on fees.[94]

In this case, Petitioner submitted an original fee petition that was deficient. When the Court gave Petitioner an opportunity to modify the submission, the new submission had more deficiencies than the original. Petitioner did not provide affidavits of counsel in the area with similar rates, affidavits of counsel practicing similar work, cases finding similar rates awardable, the background of either Mack or "the paralegal," nor an accurate billing log. Petitioner's first billing log described the date, hours, and work substance, but did not provide the rates billed or the

---

[93]    Doc. 19-2 at 10 ("Prepared Motion for Attorney's Fees and Costs").
[94]    *See United States ex rel. Palmer v. C&D Techs. Inc.*, 897 F.3d 128, 142 (3d Cir. 2018).

identity of the individual billing such hours.[95] Petitioner's second log consists only of an excel sheet summary of claimed hours, which does provide the rates and identities of the individuals billing, but which eliminated the descriptions of the work entirely.[96]

The Court declines to award fees on fees based on these submissions. The Court has expended a significant amount of time and resources parsing these submissions, including conducting extensive research of rates in similar cases and calculating line-by-line rates for each entry on the hours log. Petitioner's submissions are especially disappointing given that the Court laid out the deficiencies of the first petition and provided Petitioner with a second chance to fix the submission.[97] Moreover, given *Neves*, it is clear that this is not the first time that Gardner's fee submissions have been found to be deficient.[98] Accordingly, fees on fees will be excised from the fee submission, listed as reason "C" in the Appendix.

---

[95]    Doc. 19-2 at 10.

[96]    Doc. 21-2 at 1.

[97]    Doc. 20 at 3 n.5 ("Petitioner should address the reasonable rate for Williamsport litigation in this specific practice area, guided by prior cases finding as much"); at 4 n.4 (noting frustration with the rate submission and indicating that the Court has calculated several different billing rates from the hours log, such inconsistencies which were not explained in the second submission); at 5 (instructing counsel to provide "[i]nformation and argument as to why [the rates sought] and hours are both reasonable and necessary given the vicinage and type of case").

[98]    *Neves*, 637 F. Supp. 2d at 342.

### iv.    "D" – Travel Fees

Petitioner has submitted several hours billed for travel time to and from the hearing.[99] "'[U]nder normal circumstances, a party that hires counsel from outside of the forum of the litigation may not be compensated for travel time.'"[100] "'However, where forum counsel are unwilling to represent plaintiff, such costs are compensable.'"[101]

Here, Petitioner has put nothing in the record to demonstrate that local counsel was unwilling to represent Petitioner. The Gardner firm is based in the Eastern District of Pennsylvania; while Attorney Gardner makes "occasional appearances in the Middle District of Pennsylvania," the firm is not based in the forum.[102] Accordingly, the Court will excise hours billed for travel time, listed as reason "D" in the Appendix.

---

[99]   Doc. 19-2 at 12 (billing combined $2,970 for the travel to and from Williamsport).

[100]  *Hahnemann Univ. Hosp. v. All Shore, Inc.*, 514 F.3d 300, 311-12 (3d Cir. 2008) (quoting *Honeywell*, 426 F.3d at 710; *United States ex rel. Palmer v. C&D Techs., Inc.*, 897 F.3d 128, 134 (3d Cir. 2018).

[101]  *Id.*

[102]  *See Holmes*, 2025 WL 321829, at *13; *Spear v. Optimal Strategix Grp., Inc.*, No. 2:23-CV-03361, 2025 WL 1139256, at *2 (E.D. Pa. Apr. 16, 2025) (noting that attorneys from Pittsburgh were from outside the Eastern District of Pennsylvania forum and their fees were therefore not compensable); *Beard v. Ocwen Loan Servs., LLC*, No. 1:14-CV-01162, 2024 WL 100245, *6 (M.D. Pa. Jan. 9, 2024).

###### v.    "E" – Fees  Billed At Attorney Rate For Paralegal Work

Finally, in Petitioner's fee submissions, there are a few instances of hours logged at attorney rates for work better suited for paralegals or legal assistants.[103] The Court will reduce any such instances to the rate determined appropriate for the paralegal in this case, $75 per hour.[104] Such instances will be listed as reason "E" in the Appendix.

#### e.    Calculation / Summary of Attorney's Fees

The Court has examined Petitioner's submissions in detail and conducted a line-by-line analysis, attached to this Memorandum Opinion as Appendix A. For each line, the Court has indicated where hours needed to be reduced or excised. The Court has then multiplied the awarded hours by the awarded rate to receive the total award for each invoice.

Having conducted this analysis, excising the unnecessary, unreasonable, or redundant fees for reasons explained above, the Court finds 39.8 hours have been properly claimed. This is a reasonable amount of hours for the relatively short lifespan of this case.

The Court has excised all hours claimed in Invoice 1, from January 31, 2026, resulting in a $0 award for Invoice 1. For Invoice 2, from January 3, 2026, the Court

---

[103] *See, e.g.,* Doc. 19-2 at 15 (billing .3 hours at $450 / hour for "prepare civil cover sheet.").
[104] *See Distler*, 26 F. Supp. 2d at 728 (reducing hours which could have been performed by a legal assistant to a corresponding rate).

has reduced or excised many hours, resulting in a $2,902.50 award for Invoice 2. For Invoice 3, from December 20, 2026, the Court has reduced or excised many hours, resulting in a $6,633.75 award for Invoice 3. For Invoice 4, the Court has reduced or excised many hours, resulting in a $370 award for Invoice 4. Adding these together, the Court finds an award of attorney's fees totaling $9,906.25 reasonable for this case.

### 5.    Total Calculation

Having performed a full analysis of the Petitioner's claimed fees to determine what Petitioner has shown was necessary to the return of the child, the Court calculates the ultimate award now.

For filing and translation fees, the Court awards $605. For transportation costs, the Court awards a total of $3,838.68. For attorney's fees, the Court awards $9,906.25. This amounts to a total award of $14,349.93 to Petitioner.

## III.    CONCLUSION

Petitioner's motion for attorney's fees, Doc. 18, is granted in part. Respondent is ordered to pay the amount of $14,349.93 to Petitioner.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

32